**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,<br><br>     Plaintiff,<br><br>  - against -<br><br>NEUBERGER BERMAN MANAGEMENT LLC, *et al.*,<br><br>     Defendants,<br><br>  - and -<br><br>NEUBERGER BERMAN EQUITY FUNDS d/b/a NEUBERGER BERMAN INTERNATIONAL FUND,<br><br>     Nominal<br>     Defendant. | 10 Civ. 6234 (LBS) (MHD)<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE**
**INVESTMENT ADVISER DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

James N. Benedict
Douglas W. Henkin
C. Neil Gray
MILBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

*Attorneys for Defendants Neuberger Berman*
*Management LLC, Neuberger Berman LLC,*
*Benjamin Segal, Milu E. Komer, Peter E. Sundman,*
*and Jack L. Rivkin*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   PLAINTIFF HAS FAILED TO ALLEGE THAT ANY DEFENDANTS
     VIOLATED 18 U.S.C. § 1955.................................................................................. 2

     A.   Section 1955's Use of "Owns" Does Not Encompass Mere Ownership of
          Stock ............................................................................................................... 2

     B.   Applying Section 1955 Here Would Be An Extraterritorial Application Of
          The Statute ...................................................................................................... 6

II.  PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS VIOLATED
     OR CAUSED THE FUND TO VIOLATE ANY STATE ANTI-GAMBLING
     LAWS ...................................................................................................................... 7

III. PLAINTIFF'S CLAIMS FAIL UNDER THE BUSINESS JUDGMENT RULE............. 8

IV.  PLAINTIFF HAS NOT STATED A CLAIM FOR WASTE............................................ 9

V.   PLAINTIFF'S ARGUMENTS ABOUT DEMAND ARE A DODGE........................... 10

VI.  PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND............................. 10

CONCLUSION................................................................................................................. 11

APPENDIX..................................................................................................................... A-1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Agency Rent-A-Car, Inc. v. Gateway Indus., Inc.*,
  No. 6109, 1980 WL 3040 (Del. Ch. July 21, 1980)...................................................9

*American Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003) ........................................................................................7

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir. 2001) ......................................................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................1

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ..........................................................................................9

*Cedeno v. Intech Group, Inc.*,
  733 F. Supp. 2d 471 (S.D.N.Y. 2010) .......................................................................7

*Chicago & S. Air Lines v. Waterman S.S. Corp.*,
  333 U.S. 103 (1948)...................................................................................................6

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
  538 U.S. 440 (2003)...................................................................................................2

*Conley v. Gibson*,
  355 U.S. 41 (1957).....................................................................................................1

*Dorchester Investors v. Peak Trends Trust*,
  No. 99 Civ. 4696 (LMM),
  2003 WL 223466 (S.D.N.Y. Feb. 3, 2003)................................................................1

*Dubai Islamic Bank v. Citibank, N.A.*,
  126 F. Supp. 2d 659 (S.D.N.Y. 2000) .......................................................................1

*In re Bank of N.Y.*,
  35 N.Y.2d 512 (1974).................................................................................................9

*In re Citigroup Inc. Shareholder Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009) ...................................................................................8

*In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*,
  Master File No. 07 Civ. 9633 (JSR),
  2011 WL 1134708 (S.D.N.Y. Mar. 28, 2011) .........................................................10

*In re Tamoxifen Citrate Antitrust Litig.*,
  466 F.3d 187 (2d Cir. 2006) ...............................................................................10, 11

*In re Walt Disney Co. Derivative Litig.*,
  906 A.2d 27 (Del. 2006) .............................................................................................9

*Jacobson v. Peat, Marwick, Mitchell & Co.,*
  445 F. Supp. 518 (S.D.N.Y 1977) ....................................................... A-2, A-3, A-5

*Johnson v. U.S.,*
  130 S. Ct. 1265 (2010) ......................................................................... 3

*McBoyle v. U.S.,*
  283 U.S. 25 (1931) ................................................................................ 2

*McBrearty v. Vanguard Group, Inc.,*
  No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009),
  *aff'd,* 353 F. App'x 640 (2d Cir. 2009) ............................................. A-4

*Meyer v. Holley,*
  537 U.S. 280 (2003) ............................................................................. 4

*Michelson v. Duncan,*
  407 A.2d 211 (Del. 1979) .................................................................... 9

*Morrison v. Nat'l Austl. Bank,*
  130 S. Ct. 2869 (2010) ..................................................................... 6, 7

*Norex Petroleum Ltd. v. Access Indus.,*
  631 F.3d 29 (2d. Cir. 2010) ................................................................ 7

*People v. Byrne,*
  77 N.Y.2d 460 (N.Y. 1991) ................................................................. 4

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.,*
  08 Civ. 1958 (JGK),
  2010 U.S. Dist. LEXIS 105720 (S.D.N.Y. Oct. 1, 2010) .................. 5

*Pope v. Halloran,*
  428 N.Y.S.2d 957 (N.Y. App. Div. 1980) ......................................... 2

*Porat v. Lincoln Towers Comm. Ass'n,*
  464 F.3d 274 (2d Cir. 2006) ............................................................. 11

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) .................................................................. 10

*Rewis v. U.S.,*
  401 U.S. 808 (1971) ........................................................................ 4, 5

*Rousso v. State,*
  239 P.3d 1084 (Wash. 2010) ............................................................ 7, 8

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985) ......................................................................... A-6

*Southwick Clothing LLC v. GFT (USA) Corp.,*
  No. 99 Civ. 10542 (GBD),
  2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ...................... A-2, A-3, A-5

*Spiegel v. Buntrock,*
  571 A.2d 767 (Del. 1990) .................................................................. 10

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ................................................................................... A-2

*State v. Colbert*,
    IN 86-10-0897, 1987 Del. LEXIS 1286 (Del. Nov. 23, 1987) ...................................... 4

*Trans World Airlines, Inc. v. Summa Corp.*,
    No. 1607, 1986 WL 5671 (Del. Ch. May 15, 1986) ...................................................... 9

*United States v. Bass*,
    404 U.S. 336 (1971) ...................................................................................................... 4

*United States v. Hawes*,
    529 F.2d 472 (5th Cir. 1976) ................................................................................... 2, 3

*United States v. Loder*,
    23 F.3d 586 (1st Cir. 1994) ...................................................................................... A-5

*United States v. Philip Morris USA, Inc.*,
    No. Civ. A. 99-2496 (GK),
    2011 U.S. Dist. LEXIS 32053 (D.D.C. Mar. 28, 2011) ............................................... 7

*Weinberger v. Lorenzo*,
    Civ. A. No. 10692, 1990 WL 156529 (Del. Ch. Oct. 12, 1990) ................................... 2

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ............................................................................................. 9

## **Statutes**

11 Del. C. § 282 ................................................................................................................ 4

12 Del. C. § 3302(c) ......................................................................................................... 9

18 U.S.C. § 1952 ............................................................................................................... 4

18 U.S.C. § 1955 ............................................................................................................... 2

18 U.S.C. § 2 ................................................................................................................... A-5

N.Y. Penal Law § 20.25 .................................................................................................... 4

## **Other Authorities**

H.R. Rep. No. 91-1549 (1970),
    *reprinted in* 1970 U.S.C.C.A.N. 4007 ....................................................................... 4

## PRELIMINARY STATEMENT[1]

Plaintiff concedes that "a shareholder of a corporation has no ownership interest in the assets of the corporation."  OB at 27.  Plaintiff thus admits that by owning shares of 888 and NETeller, the Fund had no ownership interests in the assets of those corporations.  That concession is enough to eliminate any argument that the anti-gambling statutes Plaintiff has relied on apply to the ownership of publicly traded stock.  Moreover, Plaintiff does not respond at all to Point III(A)(2)(a) in the NB Def. Br. and therefore concedes those arguments.[2]  That eliminates Plaintiff's reliance on state anti-gambling laws:  Despite insisting that the Defendants had violated numerous states' laws, Plaintiff's response to the detailed demonstration that those laws do not apply here is utter silence.  Plaintiff also (i) relies on a standard of review abrogated by the Supreme Court, (ii) makes lengthy arguments about claims that are not asserted in this case, and (iii) tries to disprove arguments no Defendant made in this case.[3]  Although noteworthy, these errors are irrelevant to the primary reasons the Complaint should be dismissed and so are identified in Appendix A rather than in the text of this reply brief.

---

[1]  Capitalized terms not defined herein have the meanings set forth in the Memorandum of Law in Support of the Investment Adviser Defendants' Motion to Dismiss the Complaint, dated February 22, 2011 ("NB Def. Br.").  References to Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss the Complaint, dated March 25, 2011, are in the form "OB at yy."

[2]  *See Dorchester Investors v. Peak Trends Trust*, No. 99 Civ. 4696 (LMM), 2003 WL 223466, at *2 (S.D.N.Y. Feb. 3, 2003); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 670 (S.D.N.Y. 2000).

[3]  *Compare, e.g.,* OB at 14 (relying on *Conley v. Gibson*, 355 U.S. 41 (1957)) *with Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) (overruling *Conley*).  And the OB is littered with errors showing that significant parts of it were copied wholesale from pleadings in other cases.

<u>ARGUMENT</u>

I.    **PLAINTIFF HAS FAILED TO ALLEGE THAT
      ANY DEFENDANTS VIOLATED 18 U.S.C. § 1955**

Plaintiff concedes that shareholders of corporations have no ownership interest in the

assets of the corporations.  *See* OB at 27-28.  Because all Plaintiff alleges is that the Fund owned

stock in 888 and NETeller, but not that the Fund owned the assets of or participated in the

operations of either company, Plaintiff has failed to allege that the Fund violated Section 1955.

And there are other reasons to conclude that Section 1955 cannot apply here.

A.    **Section 1955's Use of "Owns" Does Not Encompass Mere Ownership of
      Stock**

Plaintiff argues that the plain meaning of the phrase "owns all or part of" in Section 1955

encompasses ownership of publicly traded stock.[4]  But courts consider the common usage of

words and phrases when interpreting criminal statutes.[5]  Under the common meaning of "owns,"

a stockholder does not own the corporation in which he holds stock.  For instance, a person who

owns a single share of Coca-Cola Company stock cannot be said to "own" the Coca-Cola

Company.  The common usage of "owns" connotes *responsible* ownership, which requires

significant influence over or responsibility for that which is owned.[6]  Read in this light, liability

---

[4]    The cases Plaintiff cites (OB at 21) provide no support for this interpretation of "own."  *Pope v.
       Halloran*, 428 N.Y.S.2d 957 (N.Y. App. Div. 1980), dealt with N.Y. Bus. Corp. Law § 630, a
       statute that permits the top ten shareholders of non-public corporations to be held liable for
       certain unpaid wages owed by the corporations.  In *Clackamas Gastroenterology Associates, P.C.
       v. Wells*, 538 U.S. 440 (2003), the Supreme Court addressed whether the physician-shareholders
       who owned the professional corporation counted as its "employees" for the numerical threshold
       of the Americans with Disabilities Act.  And *Weinberger v. Lorenzo*, Civ. A. No. 10692, 1990
       WL 156529 (Del. Ch. Oct. 12, 1990), dealt only with whether a claim was direct or derivative.
       None of these cases address what Congress meant by "owns" in connection with Section 1955.

[5]    *McBoyle v. U.S.*, 283 U.S. 25, 27 (1931).

[6]    Plaintiff suggests that *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976), addresses whether
       mere ownership of stock, without any allegation of involvement in an illegal gambling operation,
       (continued…)

2

under Section 1955 for "owning" an illegal gambling operation requires significant influence over or responsibility for the gambling operation.  This accords with what a reader using "everyday speech" would take from the text and legislative history of Section 1955 to be the intended targets of that statute — owner-operators and organized crime figures, not investors purchasing publicly listed stock on a major exchange.  And it is consistent with every case Plaintiff relies on.

The context of how "owns" is used in Section 1955 further confirms this.  The Supreme Court has made clear that "context determines meaning" for statutes.  *See Johnson v. U.S.*, 130 S. Ct. 1265, 1271 (2010) ("we 'do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense'").  The terms that precede "owns" in Section 1955 — conduct, finance, manage, supervise, and direct — denote influence over, responsibility for, or participation in the gambling operation itself, and "owns" should be read in the same context.[7] Finding that merely owning publicly traded stock acquired in the secondary market satisfies Section 1955's definition of "owns" would produce the sort of "nonsense" the Supreme Court expressly cautioned against when interpreting criminal statutes.

And such "nonsense" is unnecessary.  Plaintiff's conclusory assertion that "passive owners" are the "most culpable" with respect to Section 1955 (OB at 26) ignores the key factor distinguishing between public and private companies — the existence of markets.  For private companies, criminal prosecution of the owners and operators might be the only way to punish them.  But if the value of a public company goes down because it engages in conduct that puts

---

violates Section 1955.  *See* OB at 25-26.  *Hawes* actually dealt with whether making, selling, renting, and operating gambling machines violates Section 1955.  *See* 529 F.2d at 478.

[7] And "financing" as used in Section 1955 is not passive  — it requires the direct exchange of assets with the gambling company.  Secondary market purchases of publicly traded stock, in contrast, involve no direct transactions with the company whose stock is traded.

the company at risk of criminal prosecution, its share price will decline and that will penalize

investors who sought to profit by investing in the company.  Legislatures do not need to penalize

investments in public companies because the markets do it for them.  The prosecutions Plaintiff

refers to (OB at 28) prove this point — those were prosecutions of the companies and their

managers, not public shareholders.  In all of its arguments on this issue, Plaintiff has not been

able to cite a single case in which a secondary market purchaser has been held criminally liable

because the company whose shares it purchased had violated the law.

Put differently, Congress legislates against a backdrop of common law and traditional

concepts and intends for its legislation to incorporate those rules and concepts.[8]  Congress passed

Section 1955 with knowledge of the traditional principle that an individual is not criminally

liable for the criminal conduct of a corporation unless that person performed or caused to be

performed the criminal conduct in question.[9]  In light of that general principle, the fact that the

text and legislative history of Section 1955 did not specifically address whether owning publicly

traded stock would violate the statute, *see* H.R. Rep. No. 91-1549, § 802 (1970), *reprinted in*

1970 U.S.C.C.A.N. 4007, 4029, "strongly suggests that Congress did not intend [for] the statute

[to] have [such] broad reach."  *United States v. Bass*, 404 U.S. 336, 349-50 (1971).

In *Rewis v. U.S.*, 401 U.S. 808 (1971), for instance, the Supreme Court considered

whether 18 U.S.C. § 1952 (which prohibits interstate travel in furtherance of gambling) also

---

[8]     *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("when Congress creates a tort action, it legislates against a legal background of ordinary tort-related … liability rules and consequently intends its legislation to incorporate those rules"); *see generally Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 128 (2d Cir. 2001) (to abrogate a common law principle, a statute must "speak directly" to the question addressed by the common law).

[9]     Both New York and Delaware recognize this principle.  *See* N.Y. Penal Law § 20.25; 11 Del. C. § 282; *People v. Byrne*, 77 N.Y.2d 460, 467 (N.Y. 1991); *State v. Colbert*, IN 86-10-0897, 1987 Del. LEXIS 1286, at *5 (Del. Nov. 23, 1987).

prohibited gambling operations simply because they were patronized by out-of-state bettors.  The Court observed that persons in the United States can easily travel between states and that there are many multi-state metropolitan areas, creating a situation in which criminal activity is often patronized by out-of-state customers.  *See id*. at 812.  Given this, the Court held that an expansive interpretation of Section 1952 could "alter sensitive federal-state relationships … overextend limited federal police resources, and … produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies;" although it refused to "weigh the merits of these factors," it held that the absence of any discussion of these factors in the legislative history of Section 1952 showed that Congress did not intend for it to apply to such gambling operations.  *See id.*

The answer is the same here.  Investors can easily purchase securities on exchanges around the world without leaving "home."[10]  Plaintiff's interpretation of Section 1955 would thus (1) criminalize mere ownership of stock, which is not traditionally prohibited by state or federal law, *see supra* pp. 2-4, (2) create conflicts with foreign sovereigns and regulators, and (3) make criminals out of investors who do no more than participate in open-market transactions.[11]  The

---

[10]  *See Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 08 Civ. 1958 (JGK), 2010 U.S. Dist. LEXIS 105720, at *5-6 (S.D.N.Y. Oct. 1, 2010).  Plaintiff argues that because 888 and NETeller stock were not sold on any U.S. exchanges, any owner of those stocks must have "traveled abroad for the purpose of bringing back contraband."  *See* OB at 28.  Aside from being a *non sequitur*, that argument cannot be squared with decisions (like *Plumbers' Union*) noting that U.S. investors can purchase securities on non-U.S. exchanges without leaving the U.S.

[11]  Although Plaintiff claims that his interpretation of Section 1955 would not ensnare innocent investors, he also argues that there are no exceptions to liability under Section 1955 for "Minority or Small Holders," "Passive Owners," or "Ignorant Owners."  *See* OB at 23-26.  It is hard to understand who Plaintiff thinks would actually be excluded by his definition, because it would apparently *include* an individual investor who purchased 100 shares of stock in a public company he or she had no role in managing and without knowledge that purchasing such stock might be illegal.  Indeed, Plaintiff argues for liability here by arguing that the Investment Advisor Defendants read the prospectuses for 888 and NETeller and "attended and voted by proxy" at the annual meetings of 888 and NETeller.  *See* OB at 28.  But both of those are common shareholder
(continued…)

text and legislative history of the OCCA address none of these issues, strongly suggesting that

Congress did not intend Section 1955 to criminalize mere ownership of publicly traded stock.[12]

## B.   Applying Section 1955 Here Would Be An Extraterritorial Application Of The Statute

Plaintiff does not contest that Section 1955 cannot apply extraterritorially.  Instead,

Plaintiff argues that because the Fund is organized and located in the United States, pursuing

Defendants under Section 1955 would be a "*domestic* application of [Section 1955]" under

*Morrison*.[13]  But the Fund purchased 888 and NETeller stock on the LSE, and courts interpreting

*Morrison* agree that stock purchases on an exchange occur in the country in which that exchange

is located even if the purchaser is located in the United States.  *See* NB Def. Br. at 10.  And

---

[12]   activities.  Indeed, Plaintiff does not seem to recognize that a shareholder involved in the day-to-day operations of a company would have less need to read a prospectus or vote by proxy to have the sort of involvement with the actual gambling business that Congress clearly targeted in Section 1955, and so relying on activities like reading a prospectus or sending in a proxy card to trigger liability is both over inclusive and under inclusive.  Plaintiff also argues that the the *mens rea* requirement of Section 1955 would protect innocent investors from prosecution because liability under Section 1955 for owning stock requires knowledge that the corporation in question is running a gambling operation taking wagers from person in the United States.  *See* OB at 27.  But Plaintiff argues that anyone who reads a prospectus for 888 or NETeller would know everything they needed to know to create a violation of Section 1955, *see* OB at 29; Complaint ¶¶ 52-54, so this argument gets Plaintiff nowhere.

[12]   Moreover, Plaintiff's argument that regardless of where a purchase occurs, ownership occurs in the U.S. if the "owner" is located in the U.S. (OB at 22) concedes that Plaintiff's views would make criminals out of individuals who moved to the U.S. from abroad while owning stocks such as 888 or NETeller (NB Def. Br. at 14), which would have deep foreign policy implications.

[13]   *See* OB at 22.  Plaintiff argues that holding his proposed application of Section 1955 to be an extraterritorial application of that statute would allow "foreign governments … to establish safe havens [for] criminal enterprises."  Beyond the fact that this argument is entirely speculative and unsupported, not to mention inconsistent with his discussions of federal crackdowns on the gambling companies themselves, the argument risks bringing into conflict Congress's legislative powers with the Executive Branch's foreign relations powers.  *See, e.g., Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) (the President "possesses in his own right certain powers conferred by the Constitution on him … as the Nation's organ in foreign affairs").  Holding that what looks like an extraterritorial application of Section 1955 is just that would avoid this problem entirely.  And the Court need not address Plaintiff's hypothetical about a fund manager investing in an illegal drug cartel (OB at 3) because such an investment would violate the fund's investment guidelines — no more is needed for a claim.

although Plaintiff argues that Section 1955 targets ownership, the only acts Plaintiff alleges the

Fund committed were purchases of 888 and NETeller stock.  Courts applying *Morrison* to other

criminal statutes enacted under the OCCA (as was Section 1955) have held that isolated

domestic conduct does not permit such statutes to apply to what is otherwise foreign conduct.[14]

The same analysis holds here — the 888 and NETeller transactions took place on the LSE and

were not domestic transactions, and so Section 1955 could not apply even if Plaintiff's

interpretation of what Section 1955's prohibition of ownership means was correct.

## II.     PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS VIOLATED OR CAUSED THE FUND TO VIOLATE ANY STATE ANTI-GAMBLING LAWS

The Fund did not violate New York or Delaware law by purchasing securities in 888 and

NETeller.  *See* NB Def. Br. at 11-13.  Plaintiff does not respond to those arguments at all and

therefore concedes them.  *See supra* note 2.  Nor does Plaintiff respond to the Investment

Advisor Defendants' demonstration that application of state anti-gambling laws here would

violate the Dormant Commerce Clause.  The Investment Advisor Defendants did not argue that

all regulation of gambling by states was prohibited, just regulation beyond their borders.  And

statutes violate the Dormant Commerce Clause when they "have the practical effect of requiring

out-of-state commerce to be conducted at the regulating state's direction."  *American Booksellers*

*Found. v. Dean*, 342 F.3d 96, 102 (2d Cir. 2003).  Because Plaintiff's interpretation of state anti-

gambling laws would do exactly that, it is barred by the Dormant Commerce Clause.[15]

---

[14]     *See Norex Petroleum Ltd. v. Access Indus.*, 631 F.3d 29, 33 (2d. Cir. 2010); *United States v. Philip Morris USA, Inc.*, No. Civ. A. 99-2496 (GK), 2011 U.S. Dist. LEXIS 32053, at *28-29 (D.D.C. Mar. 28, 2011); *Cedeno v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010).

[15]     *Rousso v. State*, 239 P.3d 1084 (Wash. 2010) (*en banc*) (OB at 31), is entirely consistent with this view.  In *Rousso*, the Washington Supreme Court held that Washington's prohibition against internet gambling *within its own borders* did not violate the Dormant Commerce Clause.  *See* 239

(continued...)

III.    **PLAINTIFF'S CLAIMS FAIL
UNDER THE BUSINESS JUDGMENT RULE**

Plaintiff attempts to distinguish *In re Citigroup Inc. Shareholder Derivative Litigation*,
964 A.2d 106 (Del. Ch. 2009), arguing that this case involves allegations of criminal rather than
excessively risky investments.  *See* OB at 36.  As an initial matter, Plaintiff *does* argue that the
Fund's 888 and NETeller investments were "unduly risky."  *See* Plaintiff's Brief in Support of
his Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c), ECF No. 6, at 3.
*Citigroup* forecloses that argument because it establishes that even if public documents reflected
worsening market conditions and suggested that they might deteriorate further, that would not be
a basis to disregard the business judgment rule.  *See* 964 A.2d at 130.  Thus, the publicly
available information Plaintiff cites about 888, NETeller, and other companies does not in itself
make such investments "unduly risky."

And *Citigroup* would still be relevant even if secondary market transactions could violate
Section 1955.  Plaintiff argues that the Defendants acted in bad faith because public documents
showed that 888 and NETeller were running illegal gambling operations and that either (x)
Defendants were aware of these documents and knowingly caused the Fund to violate the law by
purchasing stock in 888 and NETeller or (y) Defendants acted recklessly if they were unaware of
such documents.  *See* Compl. ¶ 57.  That is similar to arguments made by the *Citigroup*
plaintiffs, and Plaintiff's conclusory allegations fail for the same reasons the allegations failed in
*Citigroup*.  *See Citigroup*, 964 A.2d at 126-28.[16]

---

P.3d at 1090.  But this case is about applying federal and state law to transactions outside any
United States state.

[16]    Plaintiff argues that ignorance of gambling laws should not be a defense to civil liability for
professional fund managers.  *See* OB at 35.  But Delaware law requires intent to violate the
applicable positive law.  *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del.
(continued…)

Plaintiff cites two other decisions in an effort to avoid the clear requirements of 12 Del.

C. § 3302(c), a statute specific to investment funds that requires courts considering "the propriety

of an investment decision" to examine "the inherent nature and expected performance of the

investment portfolio."  Plaintiff first relies on *Trans World Airlines, Inc. v. Summa Corp.*, No.

1607, 1986 WL 5671 (Del. Ch. May 15, 1986).  *See* OB at 38.  But *Trans World* (i) did not

involve investment funds (or Section 3302) and (ii) was an entire fairness case in which the

defendants bore the burden of proof, including as to damages.  *See* 1986 WL 5671, at *13.

Plaintiff next cites *In re Bank of N.Y.*, 35 N.Y.2d 512 (1974), to argue that the overall growth of

a portfolio does not insulate a trustee from responsibility for certain investments.  *See* OB at 38.

But that case related to a statutory accounting for a discretionary common trust fund established

under New York law.  To whatever extent that decision is good law, it conflicts with 12 Del. §

3302(c); because Delaware law governs here, *Bank of N.Y.* is entirely irrelevant.

## IV.   PLAINTIFF HAS NOT STATED A CLAIM FOR WASTE

Plaintiff argues that a waste claim simply requires that corporate assets be diverted for

"improper" uses.  *See* OB at 24 (citing *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979)).

But *Michelson* involved a transfer for *no* consideration, and Plaintiff ignores subsequent

Delaware Supreme Court opinions limiting waste claims to transactions which "serve[] no

corporate purpose or where the corporation receive[s] no consideration at all,"[17] neither of which

Plaintiff alleges.

---

2006).  Because Plaintiff cannot plead that any defendant should have known that mere
ownership of publicly traded stock might violate Section 1955, the Complaint fails.

[17]   *Compare Michelson*, 407 A.2d at 217 *with White v. Panic*, 783 A.2d 543, 554 (Del. 2001); *see
also Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (waste is an exchange so one-sided that no
business person of ordinary, sound judgment could conclude that the corporation has received
adequate consideration).  *Agency Rent-A-Car, Inc. v. Gateway Industries, Inc.*, No. 6109, 1980
WL 3040, at *5 (Del. Ch. July 21, 1980), does not help Plaintiff because that decision is
(continued…)

## V.   PLAINTIFF'S ARGUMENTS ABOUT DEMAND ARE A DODGE

Demand is not a real issue in this case.[18]  As the conduct of Plaintiff (in this case) and his counsel (in this case and others) shows, neither Plaintiff nor his counsel actually care how the Board addresses their claims or demand, because Plaintiff and his counsel have made clear that Plaintiff intends to pursue this case no matter what the Board says or does.  *See* Henkin Decl. Exh. H; NB Def. Br. at 15-17.  Critically, Plaintiff disputes *nothing* that the Investment Advisor Defendants have said about this issue.  Plaintiff also does not dispute that a decision that the Complaint does not state a claim would mean that no one could pursue the Complaint.[19]

## VI.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Plaintiff should not be given leave to amend his claims.  Beyond the fact that Plaintiff does not even cite the correct authority for his request (OB at 42), courts are not required to grant leave to amend when a plaintiff makes an informal request in an opposition to a motion to dismiss — precisely what Plaintiff has done here.  *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006).  Courts are even more reluctant to grant leave where, as here, a plaintiff does not explain how defects would be cured by amendment.  *See Porat v. Lincoln*

---

consistent with *White* and *Brehm* — the use of corporate funds in that case was waste because the corporation received *no* benefit.  Here the Fund paid and received the public market prices for securities it received and gave in impersonal market transactions with rational actors on the other side of each transaction.  That is not waste under Delaware law.

[18]  Plaintiff alleged that he was not required to make demand on the Fund's board because it would have been futile.  *See* Compl. ¶¶ 93-125.  Then he demanded that the Fund's board pursue the claims asserted in the Complaint.  *See* Henkin Decl. Exh. H.  That is a legally binding concession that demand was not excused and negates all of Plaintiff's allegations to the contrary.  *See In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*, Master File No. 07 Civ. 9633 (JSR), 2011 WL 1134708, at *13 (S.D.N.Y. Mar. 28, 2011); *Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993); *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990).

[19]  Plaintiff's "waiver" argument (OB at 13) is also wrong.  The demand requirements go to standing, not jurisdiction.  The Court's jurisdiction was established by the substance of Plaintiff's allegations; the Court twice upheld its jurisdiction against Plaintiff's challenges.  And the OB makes clear that Plaintiff is the only one trying to avoid having the Court decide whether he has stated a claim.

*Towers Comm. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  And it is abundantly clear that amendment would be futile here, which is an independent ground for denying leave to amend. *See Tamoxifen*, 466 F.3d at 220.  Plaintiff and his counsel have had numerous chances to plead and refine their claims in this case, in other cases before this Court, and in other cases before other courts.  The Court would be entirely justified in concluding that amendment would be futile here.

**CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in the NB Def. Br., the Complaint should be dismissed in its entirety with prejudice.

Dated:  April 7, 2011

MILBANK, TWEED, HADLEY & McCLOY LLP

By:    s/ Douglas W. Henkin
    James N. Benedict
    jbenedict@milbank.com
    Douglas W. Henkin
    dhenkin@milbank.com
    C. Neil Gray
    cngray@milbank.com
One Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Attorneys for Defendants Neuberger Berman Management LLC, Neuberger Berman, LLC, Benjamin Segal, Milu E. Komer, Peter E. Sundman, and Jack L. Rivkin*

**APPENDIX**

| GENERAL ERRORS | | |
| --- | --- | --- |
| **Page of Opposition Brief** | **Plaintiff's Statement** | **Reason Plaintiff's Statement is Erroneous or Inappropriate** |
| 13 | "Defendants' complaint about having to prepare motion papers unnecessarily is less than forthcoming with the Court:  those papers were originally drafted in response to *Gamoran I* prior to the voluntary dismissal of that case without prejudice — and there was never any genuine need to do any further work on those papers in this case." | This is unfounded speculation.  As Plaintiff knows, Defendants had to do relatively little drafting work in connection with *Gamoran I* because of the stay stipulation entered in that case pending the outcome of *McBrearty*.  It is odd that Plaintiff forgets this, because he relies on that stipulation to assert that the claims in this case are timely.  *See* Compl. ¶ 103.<br><br>And given the documented history of Plaintiff and his counsel changing positions on demands both before and after adverse decisions and continuing to pursue cases like this, *see* Henkin Decl. Exh. A & H; NB Def. Br. at 4-5, Plaintiff's complaint about what work Defendants' counsel did and when they did it to defend against the claims Plaintiff insists be pursued should be given no weight at all. |
| 20 | ". . . from illegal gambling in the U.S. (A-26, 79, 87, 286-87, 317)" | Citation appears to refer to the appellate record in another case and to have been copied from the briefing in that case. |

| FACTUAL ASSERTIONS RAISED FOR THE FIRST TIME IN OPPOSITION BRIEF | | |
|---|---|---|
| **Page of Opposition Brief** | **Plaintiff's Statement** | **Reason Plaintiff's Statement is Erroneous or Inappropriate** |
| 7 | " … the DOJ issued a public warning letter …" | Not alleged in the Complaint.  Plaintiff cannot amend the Complaint through his Opposition Brief.[20]<br><br>The Court cannot take judicial notice of this type of document.[21] |
| 7 | " … Testimony of John G. Malcom, Deputy Assistant Attorney General, Criminal Division, United States Department of Justice …" | Not alleged in the Complaint.  Plaintiff cannot amend the Complaint through his Opposition Brief.[22] |

---

[20]   *See, e.g., Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F. Supp. 518, 526 (S.D.N.Y 1977) ("a party is not entitled to amend his pleading through statements in his brief"); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542 (GBD), 2004 WL 2914093, at *6-7 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiff's opposition papers, and hence such new allegations and claims should not be considered … .").

[21]   Even if the Court determined that it was permitted to take judicial notice of this type of document, it could only take judicial notice of the fact that it contained certain statements, not the truth of those statements.  *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents") (emphasis in original).

[22]   *Jacobson*, 445 F. Supp. at 526; *Southwick*, 2004 WL 2914093, at *6-7.

| 7 | "In 2005, *The New York Times* reported that, for one of the largest Internet gambling companies, the …" | Not alleged in the Complaint.  Plaintiff cannot amend the Complaint through his Opposition Brief.[23] |
| 28 | "Therefore, any "individual" investors (if there are any) would not be "innocent," because they would have had to do what Defendants did: travel abroad for the purpose of bringing back contraband. | The Complaint contains no allegations that any Defendant traveled abroad for any transaction at issue in this litigation.  Plaintiff cannot amend the Complaint through his Opposition Brief.[24] |

---

[23]   *Jacobson*, 445 F. Supp. at 526; *Southwick*, 2004 WL 2914093, at *6-7.

[24]   *Jacobson*, 445 F. Supp. at 526; *Southwick*, 2004 WL 2914093, at *6-7.  Nor would it make any difference whether a Defendant traveled abroad in connection with a transaction at issue in this case, because the transaction would still have taken place outside the U.S.

| **CLAIMS RAISED FOR THE FIRST TIME IN OPPOSITION BRIEF AND/OR THAT ARE NOT RESPONSIVE TO THE MOTIONS TO DISMISS** | | |
|---|---|---|
| **Page of Opposition Brief** | **Plaintiff's Argument** | **Reason Plaintiff's Argument is Erroneous or Inappropriate** |
| 29—30 | "Defendants Violated RICO" | There are no RICO allegations in the Complaint.  Although *Gamoran I* contained RICO claims, Plaintiff voluntarily dismissed those claims and did not include them in the current Complaint after (i) Judge Cote held that factual allegations like those in this case do not give rise to RICO claims and (ii) that decision was affirmed by the Second Circuit.[25] |

---

[25]   *See McBrearty v. Vanguard Group, Inc.*, No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 353 F. App'x 640 (2d Cir. 2009).

| 19 | "Furthermore, because they aided and abetted Nominal Defendant's violation of § 1955 by causing Nominal Defendant …" | Allegations that any Defendants aided and abetted other Defendants do not appear in the Complaint.  Plaintiff cannot amend the Complaint through his Opposition Brief.[26]<br><br>In any event, 18 U.S.C. § 2 is a specific intent offense.  Even if it had been pled in the Complaint and could give rise to a private right of action, to make out a claim under 18 U.S.C. § 2 Plaintiff would have to show that a defendant had knowledge that he was furthering a violation of Section 1955.  *See United States v. Loder*, 23 F.3d 586, 591 (1st Cir. 1994).  And a general suspicion on a defendant's part that his participation in certain conduct was "for some nefarious purpose" is not enough to make such a defendant guilty of aiding and abetting an alleged violation of Section 1955.  *See id*.  Plaintiff has made no effort to plead the elements of such a claim. |

---

[26]   *Jacobson*, 445 F. Supp. at 526; *Southwick*, 2004 WL 2914093, at *6-7.

| 19-20 | Plaintiff disputes the Investment Advisor Defendants' reliance on the rule of lenity, citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) | *Sedima* was not decided under the rule of lenity; the discussion Plaintiff refers to was *dicta*. *See* 473 U.S. at 491 n.10. Moreover, *Sedima* was primarily concerned with construing the civil liability provisions of RICO. *See id.* Here, in contrast, the only statutes at issue are pure criminal statutes with no civil liability adjuncts. |
| 26 | "There Is No Implied Exception for Ignorant Owners" | Defendants did not argue ignorance of the law in their Motion to Dismiss. |
| 31 | "State Anti-Gambling Laws Are Not Unconstitutional" | Defendants did not argue in their Motion to Dismiss that state anti-gambling laws are unconstitutional. |
| 39 | "The Complaint Adequately Alleges Proximate Cause" | Defendants did not argue in their Motion to Dismiss that Plaintiff did not adequately allege proximate causation. |

#4833-3646-5161